

**FILED**
5/14/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AXK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. |
| v. | ) |
| | ) |
| AIVARAS ZIGMANTAS, aka | ) |
| "Rolandas Butikis," "Rolandas Butkus," | ) |
| "Vismantas Danyla," "Tom Kempinski," | ) |
| "Arturas Liaskevicius," "Darius Meskauskas," | ) |
| "Arminas Rimkus," "Egidijus Stankus," | ) |
| "Kathy Stone," "Darius Venskus," and | ) |
| "Aivarasz Zigmaneas" | ) |

1:24-cr-00243
Judge Elaine E. Bucklo
Magistrate Judge M. David Weisman
Cat. 3 / RANDOM

Violations: Title 18, United
States Code, Sections 659,
1343, and 1344(1)

**UNDER SEAL**

<u>**COUNT ONE**</u>
(Wire Fraud)

The SPECIAL NOVEMBER 2022 GRAND JURY charges:

1. At times material to Counts One through Six of this Indictment:

a. AIVARAS ZIGMANTAS was a Lithuanian national who resided at times in Schaumburg, Illinois; Chicago, Illinois; and Fort Lauderdale, Florida.

b. The transportation of large quantities of goods across state lines using trucks typically worked in the following way: The owners of the goods contracted with a broker to arrange shipment of the goods to the buyer. The broker then advertised and solicited bids from carriers to transport the goods, and ultimately awarded the contract to one or more carriers, depending upon the size of the shipment and the number of trucks required to transport the shipment. The carrier then picked up the goods and transported them to the ultimate buyer. It was common for drivers

to be diverted to a new location before picking up a shipment, or after they had picked up a shipment.

c.     In order to operate across state lines, carriers were required to register and obtain interstate operating authority from the United States Department of Transportation ("USDOT") Federal Motor Carrier Safety Administration ("FMCSA"). Once registered, carriers were issued a unique USDOT number, which allows the FMCSA to collect and monitor a company's safety information, and a unique Motor Carrier ("MC") number, which gives the carrier legal authorization to transport goods across state lines using their company and vehicle. Depending on the company operations, a carrier may need to obtain more than one MC number. In order to obtain a USDOT and MC number, carriers were required to register and provide contact information, including a company name, contact name, mailing address, phone number, and email address, among other information.

d.     In order to broker interstate shipments, brokers were also required to register and obtain operating authority from USDOT FMCSA. Once registered, brokers were issued a unique MC number, and although they had the option to do so, they were not required to obtain a USDOT number. In order to obtain an MC number, brokers were required to register and provide contact information, including a company name, contact name, mailing address, phone number, and email address, among other information.

e.      To maintain their operating authority, carriers and brokers were required to submit a biennial update, in order to update, among other things, contact information. Registrants paid a fee both for their initial registration and each renewal.

f.      The transportation services industry frequently used online marketplaces on which brokers advertised contracts to transport goods, known as "loads." Carriers could then submit bids either through the online marketplace or to the broker directly, depending upon the online marketplace. Load Board A offered such an online marketplace with various packages offering different features. To access the marketplace, a user was required to create an account, including providing identifying and contact information such as the company name, contact name, email address, phone number, and mailing address. Users were also required to provide billing information and pay a subscription fee.

### *The Theft of Interstate Shipments of Goods Scheme*

2.      Beginning in or around March 2020 and continuing through in or around September 2023, in the Northern District of Illinois, Eastern Division, and elsewhere,

AIVARAS ZIGMANTAS,
also known as "Rolandas Butikis," "Rolandas Butkus," "Vismantas Danyla,"
"Tom Kempinski," "Arturas Liaskevicius," "Darius Meskauskas,"
"Arminas Rimkus," "Egidijus Stankus," "Kathy Stone," "Darius Venskus,"
and "Aivarasz Zigmaneas,"

defendant herein, and others, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money from other people and entities ("Victims")

3

by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3.     It was part of the scheme that ZIGMANTAS, using various aliases, falsely represented himself to be an employee or agent of real and fictitious carriers and brokers, offered contracts and submitted bids to transport loads, and fraudulently induced other individuals and entities to release shipments of goods to ZIGMANTAS and others. It was part of the scheme that ZIGMANTAS and others then diverted the shipments from their intended destinations and stole the goods.

4.     It was further part of the scheme that ZIGMANTAS and others created fictitious carriers, including Best Global Express, Mato Trans, Martin Global, JRO Global, VD Transco, SMD Transco, DMFL Express, and others, and obtained USDOT and MC numbers for these fictitious carriers.

5.     It was further part of the scheme that ZIGMANTAS and others created accounts in the name of fictitious carriers on Load Board A and other online marketplaces to locate and obtain loads to steal.

6.     It was further part of the scheme that ZIGMANTAS and others submitted bids to brokers to transport loads, purportedly on behalf of the fictitious carriers.

7.     It was further part of the scheme that ZIGMANTAS and others falsely represented that they were agents and employees of real carriers, including Carrier

A, Carrier B, and Carrier C, and submitted bids to transport loads purportedly on behalf of real carriers.

8.      It was further part of the scheme that ZIGMANTAS fraudulently induced multiple brokers to award his purported carriers contracts to transport goods across state lines. ZIGMANTAS and others persuaded the brokers to do so based on certain false pretenses, representations, and promises that ZIGMANTAS knew were false, such as:

      a.      falsely representing that they, or the identity or alias they were using, were employees or agents of a legitimate carrier with authority to enter into legitimate contracts and make promises regarding the shipment of goods;

      b.      falsely promising that, in exchange for payment, they would facilitate the transportation of goods across state lines by providing drivers and trucks associated with the legitimate carrier to transport the goods; and

      c.      falsely stating that they would direct the drivers to deliver the goods to the destination designated by the broker on behalf of the seller or manufacturer of the goods.

9.      It was further part of the scheme that ZIGMANTAS and others created fictitious brokers, including Best Global Express, Total Freight Broker, Mat Broker, A B Broker, and others, and obtained USDOT and MC numbers for these fictitious brokers.

10. It was further part of the scheme that ZIGMANTAS and others created accounts in the name of fictitious brokers on Load Board A and other online marketplaces to advertise contracts to transport loads purportedly on behalf of the fictitious brokers.

11. It was further part of the scheme that ZIGMANTAS and others falsely represented that they were agents and employees of real brokers, including Broker A and Broker B, and offered contracts to transport loads purportedly on behalf of real brokers.

12. It was further part of the scheme that ZIGMANTAS and others fraudulently induced multiple carriers to transport goods across state lines. ZIGMANTAS and others persuaded these companies to do so based on certain false pretenses, representations, and promises that ZIGMANTAS knew were false, such as:

a. falsely representing that they, or the identity or alias they were using, were employees or agents of a legitimate broker brokering the legitimate shipment of goods, with authority to enter into contracts and make promises regarding the shipment of goods; and

b. falsely promising that they would pay the carrier for its drivers to transport goods across state lines.

13. It was further part of the scheme that, in the process of diverting and stealing a shipment, ZIGMANTAS knowingly made and caused to be made false and

6

misleading statements to legitimate brokers regarding the status of the shipment, including purported pickup times and dates, locations of the shipment, delivery times and dates, and identities of individuals transporting the shipment.

14.     It was further part of the scheme that ZIGMANTAS knowingly diverted goods from their intended destination and stole the goods. Specifically, ZIGMANTAS and others  issued and caused to be issued instructions to drivers to divert shipments to other locations. ZIGMANTAS and others then had the goods offloaded from the original delivery truck and put them on another truck, which transported the goods to a warehouse or other location.

15.     It was further part of the scheme that, in the process of diverting and stealing a shipment, ZIGMANTAS made and caused to be made false and misleading statements to legitimate carriers and associated drivers regarding the identities of individuals purportedly brokering the shipment.

16.     It was further part of the scheme that, to facilitate the diversion of shipments from their intended destinations, ZIGMANTAS, using various aliases, rented and used, and caused to be rented and used, equipment such as forklifts, truck trailers, and trucks, to move and transport the stolen goods.

17.     It was further part of the scheme that, to conceal the location of stolen goods, ZIGMANTAS, using various aliases, rented and used, and caused to be rented and used, warehouses where the stolen goods were removed from trucks and stored.

18.     It was further part of the scheme that ZIGMANTAS recruited and used other individuals to drive and divert the stolen goods.

19.     It was further part of the scheme that ZIGMANTAS and others diverted the goods for their own personal benefit.

20.     It was further part of the scheme that ZIGMANTAS and others opened, used, and maintained bank accounts in the names of various aliases and entities, including using funds in the accounts to make payments to legitimate carriers and individuals in furtherance of the scheme.

21.     It was further part of the scheme that ZIGMANTAS created and caused to be created email addresses and websites in the names of fake or fraudulent entities and individuals for use in the scheme.

22.     It was further part of the scheme that ZIGMANTAS opened, caused to be opened, and maintained UPS Store mailboxes in the names of fake or fraudulent entities and individuals for use in the scheme.

23.     It was further part of the scheme that ZIGMANTAS used, and caused to be used, fraudulent identity documents, including driver's licenses and foreign passports, in furtherance of the scheme.

24.     It was further part of the scheme that ZIGMANTAS misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of the scheme, the purpose of the scheme, and the acts committed in furtherance of the scheme.

25.     It was further part of the scheme that ZIGMANTAS and others intended to steal at least approximately $13,598,479 in goods, and did steal at least approximately $9,546,632 in goods from Victims, including Victim A, Victim B, Victim C, Victim D, and others.

### Execution of the Scheme

26.     On or about July 29, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

AIVARAS ZIGMANTAS,
also known as "Rolandas Butikis," "Rolandas Butkus," "Vismantas Danyla,"
"Tom Kempinski," "Arturas Liaskevicius," "Darius Meskauskas,"
"Arminas Rimkus," "Egidijus Stankus," "Kathy Stone," "Darius Venskus,"
and "Aivarasz Zigmaneas,"

defendant herein, for the purpose of executing the scheme described above, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an email from load@tfbroker.net to a representative of Carrier D, attaching a rate confirmation for a shipment of approximately $134,000 in copper rod owned by Victim A;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO
(Wire Fraud)

The SPECIAL NOVEMBER 2022 GRAND JURY further charges:

1.     Paragraphs 1 through 25 of Count One are incorporated here.

2.     On or about December 1, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

AIVARAS ZIGMANTAS,
also known as "Rolandas Butikis," "Rolandas Butkus," "Vismantas Danyla,"
"Tom Kempinski," "Arturas Liaskevicius," "Darius Meskauskas,"
"Arminas Rimkus," "Egidijus Stankus," "Kathy Stone," "Darius Venskus,"
and "Aivarasz Zigmaneas,"

defendant herein, for the purpose of executing the scheme described above, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an email from martinglobalinc1@gmail.com to Broker E, attaching a rate confirmation for a shipment of approximately $159,000 in copper rod owned by Victim A;

In violation of Title 18, United States Code, Section 1343.

## **COUNT THREE**
(Wire Fraud)

The SPECIAL NOVEMBER 2022 GRAND JURY further charges:

1.      Paragraphs 1 through 25 of Count One are incorporated here.

2.      On or about June 18, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

AIVARAS ZIGMANTAS,
also known as "Rolandas Butikis," "Rolandas Butkus," "Vismantas Danyla,"
"Tom Kempinski," "Arturas Liaskevicius," "Darius Meskauskas,"
"Arminas Rimkus," "Egidijus Stankus," "Kathy Stone," "Darius Venskus,"
and "Aivarasz Zigmaneas,"

defendant herein, for the purpose of executing the scheme described above, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an email from tom@emrexpressinc.net to Broker C, representing that drivers would be transporting approximately $400,000 in copper cathode owned by Victim B;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR
(Wire Fraud)

The SPECIAL NOVEMBER 2022 GRAND JURY further charges:

1.      Paragraphs 1 through 25 of Count One are incorporated here.

2.      On or about June 18, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

AIVARAS ZIGMANTAS,
also known as "Rolandas Butikis," "Rolandas Butkus," "Vismantas Danyla,"
"Tom Kempinski," "Arturas Liaskevicius," "Darius Meskauskas,"
"Arminas Rimkus," "Egidijus Stankus," "Kathy Stone," "Darius Venskus,"
and "Aivarasz Zigmaneas,"

defendant herein, for the purpose of executing the scheme described above, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, and signals, namely, an email from kathystone@greatwide.org to Carrier A, directing the drivers to transport approximately $400,000 in copper cathode owned by Victim B to Elk Grove Village, Illinois and to tell the shipper that the copper cathode was going to be delivered to El Paso, Texas;

In violation of Title 18, United States Code, Section 1343.

12

**COUNT FIVE**
(Wire Fraud)

The SPECIAL NOVEMBER 2022 GRAND JURY further charges:

1.      Paragraphs 1 through 25 of Count One are incorporated here.

2.      On or about July 21, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

AIVARAS ZIGMANTAS,
also known as "Rolandas Butikis," "Rolandas Butkus," "Vismantas Danyla,"
"Tom Kempinski," "Arturas Liaskevicius," "Darius Meskauskas,"
"Arminas Rimkus," "Egidijus Stankus," "Kathy Stone," "Darius Venskus,"
and "Aivarasz Zigmaneas,"

defendant herein, for the purpose of executing the scheme described above, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an email from Broker D to jroglobalinc@gmail.com, offering JRO Global a contract to transport approximately $191,000 in copper rod owned by Victim D;

In violation of Title 18, United States Code, Section 1343.

13

## COUNT SIX
(Wire Fraud)

The SPECIAL NOVEMBER 2022 GRAND JURY further charges:

1.     Paragraphs 1 through 25 of Count One are incorporated here.

2.     On or about November 22, 2022, in the Northern District of Illinois, Eastern Division, and elsewhere,

AIVARAS ZIGMANTAS,
also known as "Rolandas Butikis," "Rolandas Butkus," "Vismantas Danyla,"
"Tom Kempinski," "Arturas Liaskevicius," "Darius Meskauskas,"
"Arminas Rimkus," "Egidijus Stankus," "Kathy Stone," "Darius Venskus,"
and "Aivarasz Zigmaneas,"

defendant herein, for the purpose of executing the scheme described above, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an email from dmflexpress@gmail.com to Broker F, representing that a driver was transporting a shipment of approximately $30,000 in liquor owned by Victim C to Victim C's intended destination;

In violation of Title 18, United States Code, Section 1343.

14

## COUNT SEVEN
(Theft of Interstate Shipments)

The SPECIAL NOVEMBER 2022 GRAND JURY further charges:

1.      Paragraph 1 of Count One is incorporated here.

2.      On or about June 20, 2021, at Elk Grove Village, in the Northern District of Illinois, Eastern Division, and elsewhere,

AIVARAS ZIGMANTAS,
also known as "Rolandas Butikis," "Rolandas Butkus," "Vismantas Danyla,"
"Tom Kempinski," "Arturas Liaskevicius," "Darius Meskauskas,"
"Arminas Rimkus," "Egidijus Stankus," "Kathy Stone," "Darius Venskus,"
and "Aivarasz Zigmaneas,"

defendant herein, with the intent to convert the goods to his own use, did steal, unlawfully take, carry away, conceal, and obtain by fraud and deception from a vehicle and trailer goods, namely, copper cathode with a value of approximately $200,000, which goods were moving as and part of an interstate shipment of property;

In violation of Title 18, United States Code, Section 659.

15

## COUNT EIGHT
(Theft of Interstate Shipments)

The SPECIAL NOVEMBER 2022 GRAND JURY further charges:

1.    Paragraph 1 of Count One is incorporated here.

2.    On or about July 20, 2021, at Carol Stream, in the Northern District of Illinois, Eastern Division, and elsewhere,

AIVARAS ZIGMANTAS,
also known as "Rolandas Butikis," "Rolandas Butkus," "Vismantas Danyla,"
"Tom Kempinski," "Arturas Liaskevicius," "Darius Meskauskas,"
"Arminas Rimkus," "Egidijus Stankus," "Kathy Stone," "Darius Venskus,"
and "Aivarasz Zigmaneas,"

defendant herein, with the intent to convert the goods to his own use, did steal, unlawfully take, carry away, conceal, and obtain by fraud and deception from a vehicle and trailer goods, namely, copper rod with a value of approximately $188,000, which goods were moving as and part of an interstate shipment of property;

In violation of Title 18, United States Code, Section 659.

16

## COUNTS NINE THROUGH THIRTEEN
(Bank Fraud)

The SPECIAL NOVEMBER 2022 GRAND JURY further charges:

1.     At times material to Counts Nine through Thirteen:

a.     AIVARAS ZIGMANTAS was a Lithuanian national who resided in the Chicago, Illinois area.

b.     Bank A and Bank B were financial institutions with branches in the Northern District of Illinois, and elsewhere, and whose deposits were insured by the Federal Deposit Insurance Corporation.

2.     From in or around August 2017, through at least in or around April 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

AIVARAS ZIGMANTAS,
also known as "Rolandas Butikis," "Rolandas Butkus," "Vismantas Danyla,"
"Tom Kempinski," "Arturas Liaskevicius," "Darius Meskauskas,"
"Arminas Rimkus," "Egidijus Stankus," "Kathy Stone," "Darius Venskus,"
and "Aivarasz Zigmaneas,"

defendant herein, knowingly participated in a scheme to defraud a financial institution as further described below.

3.     It was part of the scheme that ZIGMANTAS obtained checks drawn on accounts with insufficient funds to pay the amount on the checks, presented the checks to financial institutions, including Bank A, and deposited the checks into accounts at Bank A, thereby fraudulently inflating the balances in the accounts. It was part of the scheme that ZIGMANTAS withdrew, and caused to be withdrawn, funds from the Bank A accounts, and kept the proceeds of the scheme.

17

4.     It was further part of the scheme that ZIGMANTAS, using the fraudulent identity "Egidijus Stankus," established two bank accounts at Bank A, Bank A Accounts 1 and 2, in the entity name "EGS Contractors, Inc."

5.     It was further part of the scheme that ZIGMANTAS, using the fraudulent identity "Arturas Liaskevicius," established one bank account at Bank A, Bank A Account 3, and two bank accounts at Bank B, Bank B Accounts 1 and 5, in the entity name "EZLogistics Express Inc."

6.     It was further part of the scheme that ZIGMANTAS, using the fraudulent identity "Arturas Liaskevicius," established three additional bank accounts at Bank B, Bank B Accounts 2, 3, and 4, in the entity name "Luxury Care Contractors" and "Arturas Liaskevicius."

7.     It was further part of the scheme that defendant used fraudulent and altered identity documents, including Lithuanian passports, to open Bank A Accounts 1 through 3 and Bank B Accounts 1 through 5.

8.     It was further part of the scheme that ZIGMANTAS knowingly deposited and caused to be deposited checks drawn from accounts with insufficient funds to pay the checks into Bank A Accounts 1 through 3, for the purpose of fraudulently inflating the balances in those accounts.

9.     It was further part of the scheme that ZIGMANTAS, knowing that checks drawn from accounts with insufficient funds to pay the checks had been

18

deposited into Bank A Accounts 1 through 3, made and caused to be made withdrawals from those accounts, and collected and kept money from Bank A.

10.    It was further part of the scheme that ZIGMANTAS misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, certain material facts, including the acts and purposes of the acts done in furtherance of the scheme.

11.    As a result of the scheme, ZIGMANTAS caused at least approximately $121,384 in checks drawn from accounts with insufficient funds to pay the checks to be deposited into Bank A Accounts 1 through 3 and caused Bank A to incur a loss of approximately $86,623.

12.    On or about the following dates, at Chicago, in the Northern District of Illinois, Eastern Division,

AIVARAS ZIGMANTAS,
also known as "Rolandas Butikis," "Rolandas Butkus," "Vismantas Danyla,"
"Tom Kempinski," "Arturas Liaskevicius," "Darius Meskauskas,"
"Arminas Rimkus," "Egidijus Stankus," "Kathy Stone," "Darius Venskus,"
and "Aivarasz Zigmaneas,"

defendant herein, knowingly executed the above-described scheme by causing the following transactions involving accounts at financial institutions:

| Count | Date | Transaction |
|---|---|---|
| Nine | April 5, 2018 | Deposit into Bank A Account 1 of a $9,698.35 check drawn on Bank B Account 1 |
| Ten | April 5, 2018 | Deposit into Bank A Account 1 of a $9,973.00 check drawn on Bank B Account 2 |
| Eleven | April 6, 2018 | Deposit into Bank A Account 1 of a $9,790.00 check drawn on Bank B Account 3 |
| Twelve | April 6, 2018 | Deposit into Bank A Account 2 of a $9,950.00 check drawn on Bank B Account 1 |
| Thirteen | April 9, 2018 | Deposit into Bank A Account 2 of a $7,990.00 check drawn on Bank B Account 5 |

In violation of Title 18, United States Code, Section 1344(1).

## **FORFEITURE ALLEGATION ONE**

The SPECIAL NOVEMBER 2022 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 659 or 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      The property to be forfeited includes but is not limited to a personal money judgment in the amount of approximately $9,546,632.

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

## **FORFEITURE ALLEGATION TWO**

The SPECIAL NOVEMBER 2022 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1344(1), as set forth in this Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained directly and indirectly as a result of the offense, as provided in Title 18, United States Code, Section 982(a)(2)(A).

2.      The property to be forfeited includes but is not limited to a personal money judgment in the amount of approximately $86,623.

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
signed by Michelle Petersen on behalf of the
ACTING UNITED STATES ATTORNEY